WASHINGTON SQUARE POST #1212 AMERICAN LEGION, Edward Semenza, Nicholas Compiglia, Patrick Petrucelli, William Genovese, Steven J. Gambino, Thomas Stio, John De Dominici, Joseph Gigliano and Salvatore Ianniello Jr., Plaintiffs,

v.

The CITY OF NEW YORK, Benjamin Ward, Police Commissioner, City of New York, John L. Hogan, Assistant Director of the Federal Bureau of Investigation; Denis Maduro, Paul Meyer; Susan Schnitzer, Michael Luzzo; Cynthie Sumner, Stanley Nye, Thomas Finn, Richard McHenry, William Jenkins, and David Stone, Agents of the Federal Bureau of Investigation; Lt. William J. Shannon, Sgt. Joseph Caiola, Det. Carl Babara, Det. Patrick Purcell, Det. Steve Gilbert, Det. Joseph Blik, Det. William Pavone, and Det. Jose Flores, Police Officers of the City of New York, Defendants.

No. 86 Civ. 5018 (PKL).

United States District Court, S.D. New York.

Aug. 31, 1989.

Center for Constitutional Rights, (William M. Kunstler, Ronald L. Kuby, of counsel), Gilbert Dilucia, New York City, for plaintiffs.

Benito Romano, U.S. Atty. S.D. New York, (Susan P. Johnston, of counsel), Peter L. Zimroth, Corp. Counsel, New York City (Steven H. Mosenson, of counsel), for defendants.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiffs bring this action alleging that their constitutional rights were violated when a Federal Bureau of Investigation ("FBI")—New York Police Department ("NYPD") Joint Organized Crime Task Force ("JOCTF") conducted an investigation at American Legion Post # 1212 (the "Post"), in connection with the homicide and shooting of two task force members by persons allegedly associated with the Genovese organized crime family. Both the Federal Defendants [1] and the City Defendants [2] now move to dismiss the complaint for failure to state a claim under Rule 12 of the Federal Rules of Civil Procedure, and for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

On January 21, 1986, New York Police Department Detective Anthony J. Vendetti ("Vendetti") was killed and his partner, Detective Kathleen Burke ("Burke"), was seriously wounded by persons suspected of being members of organized crime. Detectives Vendetti and Burke were members of the FBI–NYPD Joint Organized Crime Task Force assigned to the so-called Genovese crime family and had been sworn in as Special Federal Marshals. More specifically, they were conducting surveillance of Frederick Giovanelli, an alleged member of the Genovese crime family, at the time of the shooting.

After the shooting, Detective Burke identified Giovanelli and Carmine Gaultiere ("Gaultiere") as two of the perpetrators; the latter also allegedly associated with the Genovese crime family. Because Detectives Vendetti and Burke were shot in the course of a JOCTF investigation, the shootings triggered a JOCTF search for the perpetrators and for witnesses to the shooting.

A list of locations to be visited was compiled. The locations on the list were social clubs allegedly frequented by members of the Genovose crime family. See, e.g., Declaration of James Kossler, executed on February 18, 1987 ("Kossler Declaration") ¶ 6; Declaration of Denis Maduro, executed on January 8, 1987 ("Maduro Declaration") ¶¶ 7, 9 and 14. The American Legion Post # 1212 was on this list, and members of the JOCTF # 4 were assigned to investigate it. None of the Federal Defendants had previously been to the Post.

The team approached the first location at 229 Sullivan Street at approximately 6:00 p.m. Because it was a small location, only a few of the team members were required to complete the assignment there. The other team members continued to the second location at 179 Sullivan Street, the Post.

The team members entered the Post, and allegedly identified themselves orally. However, no identification was displayed. Affidavit of Edward J. Semenza, sworn to on September 21, 1987 ("Semenza Affidavit") ¶ 4. All of the agents were wearing

---

1. The "Federal Defendants" are John C. Hogan ("Hogan"), Denis Maduro ("Maduro"), Susan Schnitzer ("Schnitzer"), Thomas Finn, Jr. ("Finn"), Cynthie Sumner ("Sumner"), Paul Meyer ("Meyer"), Richard McHenry ("McHenry"), Jin Moy ("Moy"), Michael Luzzo ("Luzzo"), William Jenkins ("Jenkins"), Stanley Nye ("Nye") and David Stone ("Stone").

2. The "City Defendants" are the City of New York, Police Commissioner Benjamin Ward ("Ward"), Lieutenant William Shannon ("Shannon"), Sargent Joseph Caiola ("Caiola"), Detective Carl Barbara ("Barbara"), Detective Patrick Purcell ("Purcell"), Detective Steven Gilbert ("Gilbert"), Detective Joseph Blik ("Blik"), Detective William Pavone ("Pavone") and Detective Jose Flores ("Flores").

blue wind breakers with the letters "FBI" or "NYPD" prominently displayed. Plaintiffs contend the officers entered the Post with their guns drawn. Semenza Affidavit ¶ 4. The persons in the Post were directed to stand facing one wall leaving their hands on the wall and spreading their legs. Chairs and tables in the middle of the room were pushed aside to clear floor space. The people who did not cooperate were forced to the wall. Plaintiffs were forced to stand in this position for more than one hour. Semenza Affidavit ¶ 6.

While the patrons were being lined up against the wall, the ground floor of the Post was secured. Team members went through the back door into the alley to ensure that no one had fled into the alley, that no one was hiding there, and to ascertain where the alley led.

After the patrons were collected at the wall, pat-down frisks for weapons and identification were conducted. During the pat-down process, the remainder of the team members arrived as they had completed their assignments at the first location. The agents began interviewing and photographing the patrons. Subsequently, the agents secured the rooms upstairs. During the investigation several additional people entered the Post. They too were interviewed and photographed.

After the investigation was completed at the Post at approximately 6:40–6:45 p.m., the team left and proceeded to the third location. Maduro Declaration ¶ 22. Gaultiere, the suspect, had been apprehended at 5:20 p.m.

The Federal Defendants are the Special Agent ("SA") in charge of the New York office, John L. Hogan, ten Special Agents of the Federal Bureau of Investigation who, as members of the FBI–NYPD JOCTF, were involved in the search for Gaultiere, and an FBI photographer, Jin Moy. Complaint ¶¶ 13–14. The City Defendants are the City of New York, Police Commissioner Ward and eight members of the New York City Police Department. Complaint ¶¶ 11–12 and 14.

## STANDARDS FOR REVIEW

### 1. *Motion to Dismiss*

A motion to dismiss under Rule 12 must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Morales v. New York State Department of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). The Court must accept the pleader's allegations of facts as true together with such reasonable inferences as may be drawn in its favor. *Murray v. City of Milford, Connecticut*, 380 F.2d 468, 470 (2d Cir.1967). *See also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686. Rule 8 requires only a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957) (*cited in Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### 2. *Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [i]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court then must determine whether there does indeed exist a genuine issue as to any

material fact; "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102 (2d Cir.1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *See also Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506 (2d Cir.1989). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim. Rather, "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* The burden on the moving party will be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the nonmoving party's case." *Id.* 477 U.S. at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial."[3] *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party," *id.*—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## DISCUSSION

In their memoranda of law, the Federal and City Defendants challenge the sufficiency of each of plaintiffs' numerous claims on one or more grounds. In their answering papers, however, plaintiffs have failed to respond to most of defendants' contentions.

■ Plaintiffs may not stand solely upon the allegations of their complaint in re-

---

**3.** Plaintiffs' statement pursuant to Civil Rule 3(g) for the United States District Courts for the Southern and Eastern Districts of New York was inadvertently omitted from plaintiffs' response to defendants' motion for summary judgment. Plaintiffs thereafter filed their 3(g) statement. Despite the delay, the Court accepts plaintiffs' 3(g) statement. Moreover, defendants request for an opportunity to reply to plaintiffs' 3(g)

statement is denied. Plaintiffs' 3(g) statement consists of five paragraphs containing information previously submitted, with plaintiffs' response, in the form of affidavits. Accordingly, as all the material contained in plaintiffs' 3(g) statement was before defendants prior to the filing of their reply, no additional briefing is necessary.

sponse to the defendants' motion. Fed.R. Civ.P. 56(e); *see also Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983) ("mere allegations in the non-moving party's pleadings are insufficient to show that there is a triable issue of fact if the moving party has made the necessary Rule 56(c) showing."); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (opposing party "may not rest upon mere conclusory allegations or denials."); *United States v. Pent–R–Books*, 538 F.2d 519, 529 (2d Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977) (If the moving party carries its preliminary burden, the opposing party may not defeat the motion by relying on the contentions of its pleading; rather, it must produce "significant probative evidence tending to support [its position].") (citation omitted); *Kletschka v. Driver*, 411 F.2d 436, 449 (2d Cir.1969) (general allegations which may have been sufficient to state a cause of action in the complaint become insufficient once opposed by a motion for summary judgment supported by affidavits). A non-moving party may not rely on mere conclusory allegations but must set forth "concrete particulars." *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Plaintiffs' failure to respond to defendants' properly supported motion for summary judgment mandates the granting of summary judgment on those claims that plaintiffs have failed to support.

With the aforesaid general principles firmly in mind, the Court makes the following preliminary observations. First, plaintiffs have failed to respond to defendants' argument that the alleged use of abusive language did not violate their constitutional rights. *See* Complaint ¶¶ 32–34; Federal Memorandum at 68–69. Accordingly, summary judgment is granted for defendants on this claim.

Similarly, plaintiffs do not counter defendants' motion to dismiss their First, Sixth and Eighth Amendment claims, as well as their substantive due process claim under the Fifth Amendment. Complaint ¶¶ 1, 21, 35–40; Federal Memorandum at 25–27, 46–50. In addition, plaintiffs have not in any manner supported their claims under 42 U.S.C. §§ 1985, 1986 and 1988 against defendants, Complaint ¶ 1; Federal Memorandum at 17–24, and their claims under § 1983 against the Federal Defendants.

Finally, while plaintiffs argue that defendant Hogan is not entitled to absolute immunity for common law torts, they do not make the same contention with respect to the other Federal Defendants. *See* Federal Defendants' Memorandum at 31–36. Accordingly, plaintiffs' Eighth, Ninth and Tenth causes of action are dismissed against all of the Federal Defendants, except Hogan, on this ground.

The Court will now address the remaining claims.

### 1. *Section 1983 Claims*

The City of New York and Police Commissioner Ward have challenged plaintiffs' § 1983 claim against them. Summary judgment has already been granted on the § 1983 claims against the Federal Defendants. The Court notes however, that plaintiffs' § 1983 claims against the individual City Defendants have not been challenged by the present motion.

### A. *City of New York*

■ It is undisputed that a municipality cannot be held liable under 42 U.S.C. § 1983 solely on a *respondeat superior* theory. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Rather, a plaintiff who asserts a § 1983 claim against a municipal entity must allege that the complained of action "unconstitutional[ly] implements or executed a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers[,]" *see Monell, supra*, 436 U.S. at 690, 98 S.Ct. at 2035–36, or that the alleged unlawful action results from government custom, "even though such a custom has not yet received formal approval through the body's official deci-

sion-making channels." *Id.* at 691, 98 S.Ct. at 2036.

The Second Circuit has stated that:

to hold a city liable under sec. 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: 1) an official policy or custom that 2) causes the plaintiff to be subjected to 3) a denial of a constitutional right.

*Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983).

■ An official policy or custom can be inferred from a municipality's failure to act as well as positive actions. *See, e.g., Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). However, a mere failure to supervise employees or to provide proper training is not actionable unless the failure is so severe as to constitute "deliberate indifference" to the deprivation of plaintiff's rights. *See, e.g., Canton, Ohio v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). A failure to provide proper training may fairly be said to represent a policy for which the city is responsible where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris, supra,* 109 S.Ct. at 1205. Furthermore, there must be a close relationship between the flaw in the training program and the resulting injury. *Id.* Accordingly, a policy cannot ordinarily be formed from a single incident of illegality. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (single municipal employee); *Turpin, supra,* at 202; *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Meriwether v. Coughlin,* 879 F.2d 1037 (2d Cir.1989). In light of these principals, the Court will now examine plaintiffs' claim.

■ Plaintiffs claim that the City of New York intentionally and/or recklessly trained, supervised and controlled defendants that violated plaintiffs' constitutional rights. Complaint ¶¶ 53–55. It is further alleged that the City of New York permitted and tolerated a pattern and practice of "unjustified, unreasonable and illegal searches, seizures, assaults and batteries against persons thought to be involved in any ways with the deaths or injuries of members of the NYPD...." Complaint ¶ 57.

Plaintiffs attempt to impose liability under § 1983 by alleging that the incident in question is part of a pattern of illegal police activity. However, no factual connection is alleged between the incident in question and any other incidents of allegedly illegal police conduct, other than a vague and conclusory allegation that "[a]ccording to law enforcement sources, said raid was part and parcel of a sweep on some thirty-one premises of various social organizations," Complaint ¶ 16, and that these "raids" all occurred on the same day, January 23, 1986. However, none of the "raids" which allegedly occurred on January 23, have been asserted to have been illegal. These contentions are clearly insufficient to withstand a motion for summary judgment.

Moreover, plaintiffs' sole support for their allegation that the City defendant permitted and tolerated a pattern and practice of illegal searches *prior* to January 23, 1986, the date of these alleged "raids," is a citation to the complaint in *Adelona v. Webster,* 654 F.Supp. 968 (S.D.N.Y.1987). Plaintiff cites the complaint in *Adelona* to support a claim that the defendants have been "guilty of similar conduct in the past." Plaintiffs' Memorandum at 2. However, the complaint in *Adelona* was withdrawn after defendants were granted summary judgment on a number of plaintiffs' claims, and no findings of "guilt" against any defendant was made. Accordingly, plaintiffs' attempt to impose liability under § 1983 by alleging that the incident in question is part of a pattern of illegal police activity must fail.

Nevertheless, plaintiffs contend that the single incident involved in this case is so brutal or egregious that an inference may be drawn that the unlawful action is attributable to inadequate training or supervision, thereby establishing municipal liability. In support of this position, plaintiffs cite *Owens v. Haas,* 601 F.2d 1242 (2d Cir.1978) (prisoner severely beaten by seven guards). While the Second Circuit may not require that a certain minimum number of episodes occur before governmental liability arises under *Owens,* it is clear that where one particularly violent incident is alleged it is still necessary for detailed pleading to establish municipal liability for failure to supervise or condonation.

Moreover, the Supreme Court has further delineated the propriety of imposing municipal liability on the basis of an isolated incident. *See Pembaur, supra; Tuttle, supra.* In *Tuttle, supra,* 471 U.S. at 821, 105 S.Ct. at 2435, the Supreme Court rejected the trial court's instruction that a jury could infer from a single, unusually excessive use of force that it was attributable to inadequate training or supervision amounting to "deliberate indifference" on the part of the officials in charge. The Supreme Court stated:

> We think this inference unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers. But more importantly, the inference allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker. The foregoing discussion of the origins of *Monell's* "policy or custom" requirement should make clear that, at the least, that requirement was intended to prevent the imposition of municipal liability under circumstances where no wrong

could be ascribed to municipal decision-makers.

*Tuttle, supra,* 471 U.S. at 821, 105 S.Ct. at 2435; *accord Harris, supra,* 109 S.Ct. at 1205.[4]

The sole evidence before the Court is the alleged illegal search of the Post on January 23, 1986. Plaintiffs have presented no other evidence of a "policy or custom" and have not requested additional discovery. The exclusive evidence before the Court is of one isolated incident of allegedly illegal police activity, with no allegation of any action by a municipal policymaker. Reading plaintiffs' allegations and evidence in the light most favorable to them, the Court finds that, even if proven, this incident alone would be insufficient to support an inference of a municipal policy of inadequate supervision. Moreover, plaintiffs have not alleged sufficient facts to suggest the necessary causal link between the individual incident of misconduct and the City's official decision-making bodies. Accordingly, summary judgment is granted for the City of New York on plaintiffs' § 1983 claim.

### B. *Defendant Benjamin Ward*

Defendant Ward contends that he is entitled to summary judgment as plaintiffs have failed to allege that he had any direct and personal responsibility for the conduct of which they complain. *See, e.g., Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (prison warden not liable for money damages in § 1983 case when the complaint did not allege that he had authorized conduct complained of, nor that he had notice of a failure in training which resulted in the conduct); *Leonhard v. United States,* 633 F.2d 599, 621 n. 30 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) ("Public officials may be held responsible only to

---

**4.** The holding in *Owens* is not to the contrary. The *Owens* Court did not hold that a single, though egregious incident could establish a municipal policy or custom. Rather, it merely permitted plaintiff limited discovery to determine whether a case could be made for deliberate indifference. Moreover, in *Owens,* aside from the single incident alleged in the complaint, there was independent evidence that a failure to train or supervise could be present. *Owens, supra,* 601 F.2d at 1246 (one officer "fairly new" on the job; defendant had a "show of force" policy).

the extent that they caused the plaintiff's rights to be violated; they cannot be held liable for violations committed by their subordinates ..."); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

As the Second Circuit has stated:

A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction. *See, e.g., Johnson v. Glick*, 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (prison guard liable for beating inmate); *Sostre v. McGinnis*, 442 F.2d 178, 205 (2d Cir. 1971) (en banc), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) (prison Warden liable for ordering that inmate be placed in solitary confinement). A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. *See, e.g., United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir.1975). A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. *See, e.g., McCann [v. Coughlin], supra*, 698 F.2d [112] at 125 [ (2d Cir.1983) ]; *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Duchesne v. Sugarman*, 566 F.2d 817, 830–31 (2d Cir.1977).

*Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

Moreover, a causal nexus between the supervisor's conduct and the injuries alleged must also be demonstrated. *See Bowen v. Watkins*, 669 F.2d 979, 988–89 (5th Cir.1982) (supervisory officials may be liable when their own actions in failing to supervise are a proximate cause of the constitutional violation); *Pennsylvania v. Porter*, 659 F.2d 306, 321 (3d Cir.1981) (*en banc*), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982) (determining the liability of a police chief required an evaluation of "the degree to which he participated in a pattern of violation by virtue of knowledge, support and encouragement"). As the court noted in *Bowen:*

[A] failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse. The knowledge may be imputed to the supervisory official, and he can be found to have caused the later violations by his failure to prevent it.

*Bowen, supra*, 669 F.2d at 988.

■ Plaintiffs claim that defendant Ward is liable in that he "intentionally and/or so recklessly trained, supervised and controlled other defendants and that they committed the complained of illegal acts." Plaintiffs Memorandum at 12–13; Complaint ¶¶ 41–42. However, plaintiffs do not allege in what manner they believe Commissioner Ward's training, supervision or control of the police officers involved was improper, intentional or reckless, or the means by which it proximately caused the conduct of which they complained. *See Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977). Further, there is no factual allegation of prior "widespread abuse" on the part of the police officers, knowledge of which may be imputed to Commissioner Ward. In addition, there is no factual allegation that Commissioner Ward was aware of, supported or encouraged a pattern of constitutional violations which led to the conduct in issue. In the absence of personal involvement on the part of Commissioner Ward, he cannot be held liable for damages under section 1983. *See Giacalone v. Abrams*, 850 F.2d 79, 86 n. 1 (2d Cir.1988); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987). Moreover, where, as here, the complaint is devoid of factual allegations showing how the supervisor's conduct caused the alleged constitutional violation, it is insufficient. Accordingly, summary judgment is granted for Commis-

sioner Ward on plaintiffs' § 1983 claim.[5] *See Kletschka v. Driver*, 411 F.2d 436, 447–49 (2d Cir.1969).

### 2. *Bivens Claims against the Federal Defendants*

Plaintiffs' claims for money damages against the Federal Defendants in their personal capacities are based upon the federal analogue to a civil rights suit against state officials under 42 U.S.C. § 1983, which was created in the 1971 Supreme Court decision *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971). In *Bivens*, the Court held that plaintiff could recover money damages for constitutional torts committed by federal agents. Because the United States has not waived its sovereign immunity for constitutional torts, *Contemporary Mission, Inc., supra*, 648 F.2d at 104–05, plaintiffs may obtain monetary relief solely from defendants in their individual capacities.

### A. *Defendant Hogan*

Plaintiffs have named Hogan as a defendant in this case on the theory that as the head of the New York office of the FBI he is responsible for the control, training and supervision of the agents assigned to that office, Complaint ¶ 13, that he did not properly train, supervise or control them, Complaint ¶ 20, and that "he intentionally and/or so recklessly trained supervised and controlled the [unnamed] defendants … [they] committed the acts" alleged. Complaint ¶ 54.

■ For Hogan to be held liable to plaintiffs for money damages, under any of the constitutional theories plaintiffs assert, he must have had direct and personal responsibility for the conduct of which they complain. *See, e.g., Galluccio v. Holmes*, 724 F.2d 301, 305 (2d Cir.1983); *Black v. United States*, 534 F.2d 524, 527–28 (2d Cir. 1976); *Johnson v. Glick*, 481 F.2d 1028,

1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Home Indemnity Co. v. Brennan*, 430 F.Supp. 828, 832–33 (S.D.N.Y.1977). Where, as here, plaintiffs have failed to allege such direct and personal responsibility on a defendant's part for the conduct at issue, the Complaint is insufficient as a matter of law.

■ A corollary to the requirement that a *Bivens* defendant have had direct and personal responsibility is the rule that a *Bivens* claim may not be premised upon a *respondeat superior* theory. *See Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453–54, 70 L.Ed.2d 509 (1981); *Leonhard v. United States*, 633 F.2d 599, 621 n. 30 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) ("Public officials may be held responsible only to the extent that they caused the plaintiff's rights to be violated; they cannot be held liable for violations committed by their subordinates….").

Hogan was not, and is not alleged to have been present at the Post on January 23, 1986, and may not be charged with the events which occurred there merely because he is the head of the New York office of the FBI. To the extent that the complaint seeks to hold him liable under a *respondeat superior* theory, it is insufficient as a matter of law.

■ Moreover, the conclusory allegations that Hogan was responsible for the training, supervision and control of the defendants, that he did not discharge these responsibilities "properly," and that the training, supervision and control which he "intentionally and/or so recklessly" provided caused them to act as they are alleged to have done on January 23, 1986, fail to state a constitutional claim against him for failure to supervise or train.

■ In order to claim that a defendant's training, supervision or control of personnel in his charge caused unconstitu-

---

**5.** To the extent, if any, the Complaint attempts to impose liability on Commissioner Ward in his individual capacity, that claim must fail. There is no allegation the defendant Ward personally participated in the events on January 23, 1986. Accordingly, summary judgment is granted for defendant Ward on the claim against him in his individual capacity.

tional conduct by such personnel, a plaintiff must allege that the supervisor, after learning of the violation through a report or appeal, failed to remedy the wrong, or the supervisor created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986); *see also Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Barbera v. Smith,* 836 F.2d 96 (2d Cir.1987).

Moreover, a causal nexus between the supervisor's conduct and the injuries asserted must also be alleged. *See, e.g., Bowen, supra,* 669 F.2d at 988–89; *Porter, supra,* 659 F.2d at 321. Where, as here, the Complaint is devoid of factual allegations showing how the supervisor's conduct caused the alleged constitutional violation, it is insufficient and must be dismissed. The factual allegations against Hogan do not reveal any causal connection between the training and supervision he is said to have provided the agents, and the actions they are said to have performed, and, accordingly, summary judgment is granted for defendant Hogan.

### B. *The Remaining Federal Defendants*

■ The Court turns next to plaintiffs' *Bivens* claims against the remaining Federal Defendants. The Federal Defendants contend that summary judgment should be granted as they are protected by qualified immunity. A government actor is entitled to qualified immunity "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or where the rights were clearly estab-

lished, insofar as it was objectively reasonable to believe that his acts did not violate those rights. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). Though this second route to exoneration, unlike the first, has its principal focus on the particular facts of the case, it too may lead to summary judgment if defendants "adduce sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, plaintiffs, could conclude that it was objectively unreasonable for defendants to believe that they were acting in a fashion that did not clearly violate an established federally protected right." *See, e.g., Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986) (Scalia, J., sitting by designation).

The right of an individual not to be subjected to unreasonable searches and seizures has long been clearly established. Thus, the question presented is whether it was objectively reasonable for defendants to believe that the search of the Post on January 23, 1986, did not violate that right. In other words, could a reasonable officer have believed the warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. *See Anderson v. Creighton, supra.* As explicated below, there are material issues of fact in dispute which prevent the granting of summary judgment on plaintiffs' Fourth Amendment claims and defendants' claim of qualified immunity.[6]

#### i. *Fourth Amendment Claims*

In plaintiffs' second and third causes of action they allege that the Federal Defen-

---

6. The City Defendants did not originally move to dismiss the Complaint on the grounds that they were protected by qualified immunity. However, in their reply papers, the City Defendants joined in the Federal Defendants' claim of qualified immunity. The Court has denied the Federal Defendants' motion for summary judgment based on qualified immunity, and will not

raise, *sua sponte,* additional arguments for the application of the qualified immunity defense to the City Defendants. To the extent, if any, the City Defendants' claim of qualified immunity is not encompassed by the Federal Defendants' motion, the City Defendants can present these issues to the Court in a subsequent motion.

dants[7] violated their Fourth Amendment rights to be free of unreasonable searches and seizures and to be free from arrest without probable cause. Complaint ¶¶ 24, 27.

The Fourth Amendment protects persons, not places. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873–74, 20 L.Ed.2d 889 (1968). Its purpose is to protect persons from arbitrary and oppressive governmental conduct and to vest them with the right to be free from unreasonable Government intrusions into areas as to which they have reasonable expectations of privacy. *See United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977). Whether a search warrant is required in general depends upon whether there is a reasonable expectation of privacy in the premises to be entered by government investigators. The reasonable expectation of privacy standard has a twofold requirement:

> First, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable.

*Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *see also Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Barrios–Moriera,* 872 F.2d 12 (2d Cir. 1989).

▮ The law is clear that absent exigent circumstances, a search warrant is required to enter a location not open to the public, and conversely, a search warrant is not needed if the location is open to the public. Defendants contend that plaintiffs had, as a matter of law, no reasonable expectation of privacy at the Post, and that therefore no search warrant was required to enter. Additionally, defendants contend that their entry into the Post was consensual.

In support of their position, defendants cite cases involving situations where the public was generally admitted to the gathering places. *See Ouimette v. Howard,* 468 F.2d 1363 (1st Cir.1972); *Commonwealth v. Cadoret,* 388 Mass. 148, 445 N.E.2d 1050 (1983). In those cases, selective admissions policies were not enforced so, in effect, those clubs were public rather than private premises. However, in determining the reasonable expectation of privacy question, the actual practice as to admitting persons *of the club in question* must be considered. *Ouimette, supra.*

▮ Plaintiffs contend that the Post is a private club to which only members and their guests are admitted. *See* Affidavit of John J. Barone, sworn to on September 21, 1987 ("Barone Affidavit"). Rule 11 of the Post's Rules and Regulations states "No outsiders or non-members will be admitted unless accompanied by a member." Barone Affidavit ¶ 2 and Exhibit A. These rules and regulations are prominently displayed near the front door of the Post, and were so displayed on the date in question. Semenza Affidavit ¶ 2. Whenever the Post is open for business, there is always an officer present to stop and check every person, other than members and their guests before allowing them to enter upon or remain on the premises. Semenza Affidavit ¶ 2. Plaintiffs' contention that the selective admission policy of the Post is enforced is sufficient to defeat defendants' motion for summary judgment.[8]

---

7. Plaintiffs' claim under the Fourth Amendment is against all the Federal Defendants, excluding defendant Hogan.

8. Defendants' contention that social clubs at which organized crime activities allegedly occur or have occurred can expect visits from governmental agents for the purpose of investigating organized crime activities, *see* Federal Defendants' Memorandum at 55, is without merit. Such governmental visits may not occur without either a search warrant or an applicable exception to the warrant requirement. *Cf. Wilkinson v. Forst,* 832 F.2d 1330, 1338 (2d Cir.1987) ("However understandable the difficulties which Connecticut public authorities confront in dealing with Klan rallies, their conduct must nonetheless be measured against the constitutional standards of the fourth amendment, which prohibits 'unreasonable searches and seizures.'").

Nor do the events of January 23, 1986 demonstrate that the Post is open to non-members. The task force members contend that they were "invited in," and that a young woman entered the premises in search of a package she had left there earlier. Federal Memorandum at 56. This woman allegedly stated that she had used the Post for this purpose on several prior occasions. Stone Declaration ¶ 13. However, this evidence alone is insufficient to grant defendants' motion, as it does not demonstrate that the selective admission policy of the Post was not enforced. For example, it is unclear whether this individual was a guest of a member. In sum, defendants' motion for summary judgment on this claim is denied as there is a material issue of fact in dispute; namely, whether plaintiffs had a reasonable expectation of privacy in the Post.

Finally, plaintiffs have submitted sufficient evidence to rebut defendants' contention that the entry onto the Post was consensual. Consent to search must be voluntarily given, and "not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973); *see also United States v. Ceballos*, 812 F.2d 42, 49 (2d Cir.1987). Plaintiffs assert that the officers entered the Post, without permission, and with their weapons drawn. Semenza Affidavit ¶ 7. This is sufficient to create an issue of fact over whether the entry was consensual.

### ii. *Qualified Immunity*

■ Defendants further argue that even if their entry was illegal they are entitled to qualified immunity as a "reasonable officer could have believed the search was lawful in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton*, *supra*, 107 S.Ct. at 3039. Specifically, defendants contend that the "agents' knowledge of the killing of Detective Vendetti

and the shooting of Detective Burke, the identification of Gaultiere by Detective Burke, his relationship to the Genovese crime family, and the identification of the Post as a Genovese family hang-out *which was open to the public*, provided reasonable grounds for the failure to obtain a search warrant and for the ensuing scope of the investigation at the Post." Federal Defendants' Reply Memorandum at 11 (emphasis added). However, as discussed above, it is a disputed issue whether, in fact, the Post was open to the public. Additionally, there is no evidence that the Federal Defendants knew that the Post at issue in this litigation was open to the public. None of the Federal Defendants had visited the Post previously. Rather, the Federal Defendants merely contend that since other social clubs did not enforce selective admission policies, it was reasonable to assume that the Post did not enforce its selective admission policy. *See, e.g.*, Maduro Affidavit ¶ 11 ("Because the type of social clubs which we were to visit are, in the experience of the JOCTF, open to the public, we did not believe search warrants were required. I personally have entered numerous organized crime related social clubs without search warrants in the course of various investigations, and have never been told they were closed to the public, or that I needed a search warrant."); Kossler Declaration ¶ 6 ("The social clubs frequented by these Genevose family members are meeting places for organized crime figures, but are open to the public—that is, no official membership is required nor is public access limited").

The American Legion is an organization established by Congress under 36 U.S.C. § 41 *et seq.* By statute, its membership is national, and includes all veterans of the naval or military services of the United States during periods of war. The Post's rules, barring entry by nonmembers were posted at the door. Accordingly, the knowledge of defendants concerning the admission policy of the Post is in dispute.[9] In

---

**9.** The Federal Defendants contend that those defendants who were not present at the initial entry can have no liability for the allegedly illegal entry. In support of this proposition

defendants cite *Ghandi v. Police Department of City of Detroit*, 747 F.2d 338 (6th Cir.1984). However, in *Ghandi*, the court granted summary judgment for several FBI agents who had no

drawing all reasonable inferences in favor of plaintiffs, the Court is constrained to deny defendants' motion for summary judgment on the claim of qualified immunity.[10] Summary judgment is denied on defendants' claim of qualified immunity.

### 3. Fifth Amendment Procedural Due Process Claim

■ Plaintiffs claim that certain items were either taken or damaged during the search of the Post, which they allege violates their rights under the Fifth Amendment. Complaint ¶ 30. A governmental taking of property can violate the procedural due process clause of the Fifth Amendment only if the plaintiff can establish three elements: 1) a property interest, 2) a deprivation under color of law, and 3) lack of due process. *See, e.g., Estes–El v. State of New York,* 552 F.Supp. 885 (S.D.N.Y. 1982); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981); *see also Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

■ Initially, the Court notes that the individual plaintiffs, who are the only plaintiffs claiming property damages, have not set forth a basis for any personal interest in any property allegedly taken or destroyed. This alone is sufficient to grant summary judgment on this claim for defendants.

Moreover, plaintiffs have failed to demonstrate that the post-deprivation remedies provided by the tort claims act of the United States and the State of New York do not afford due process. In *Parratt, supra,* the Supreme Court rejected plaintiff's claim that a tortious loss of his property as a result of a random and unauthorized act by a state employee deprived him of due process under the Fourteenth Amendment, when the state provided adequate post-deprivation remedies for the loss. The Court quoted with approval the analysis set forth by then Judge Stevens in *Bonner v. Coughlin,* 517 F.2d 1311, 1319 (7th Cir. 1975), *modified en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978):

> It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers.... We may reasonably conclude, therefore, that the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment.

*Parratt, supra,* 451 U.S. at 542, 101 S.Ct. at 1916.

*United States v. Williams,* 604 F.2d 1102 (8th Cir.1979) (where entry into defendant's house was unlawful, subsequent security sweep was also unlawful); *see also Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *cf. Murray v. United States,* — U.S. ——, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (exclusionary rule prohibits introduction of derivative evidence that is product of primary evidence seized during unlawful search or that is otherwise acquired as result of unlawful search up to the point at which connection with unlawful search becomes so attenuated as to dissipate taint). Moreover, the Court notes that there are numerous factual issues in dispute that would preclude the granting of summary judgment for defendants on these additional claims.

---

personal involvement at all in the illegal surveillance. Although, in the present case, the underlying facts concerning the entry and action of the Federal Defendants is unclear, it is undisputed that all the Federal Defendants, excluding Hogan, entered the Post. To contend that only the agent or agents who first crossed the threshold of the Post could violate plaintiffs' Fourth Amendment rights is an artificial distinction. Accordingly, summary judgment cannot be granted on this ground.

10. As the Court cannot determine whether the entry onto the Post violated plaintiffs' Fourth Amendment rights or if the Federal Defendants are entitled to qualified immunity, it need not address the remaining Fourth Amendment allegations at this time. For, if the entry was illegal, the subsequent searches and detentions would be tainted by this illegal entry. *See, e.g.,*

The fact that the state remedy does not include all the relief available under § 1983 does not make it an inadequate remedy. *Id.* at 533, 101 S.Ct. at 1911–12. Additionally, the unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, "the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy." *Hudson v. Palmer, supra,* 468 U.S. at 533, 104 S.Ct. at 3204.

New York State provides a post-deprivation remedy for the property damage alleged in this case, sufficient to satisfy the Fifth Amendment. *See Estes–El v. State of New York,* 552 F.Supp. at 889. The Court need not resolve any dispute which may arise between the parties concerning property damage to hold that plaintiffs have a cause of action for such damage under New York law which, if their claims are meritorious, would fully compensate them for the alleged property loss. *See, e.g., Cook v. City of New York,* 607 F.Supp. 702 (S.D.N.Y.1985) (alleged seizure of book from inmate's cell did not deprive inmate of any constitutional rights).[11]

Similarly, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.,* and Federal Rule of Criminal Procedure 41(e) provide for actions against the United States in tort or for the return of property taken by federal employees acting within the scope of their employment. These post-deprivation remedies are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. *Parratt, supra.*

The remedies provided could have fully compensated plaintiffs for the property loss allegedly suffered. Until plaintiffs can demonstrate that they have availed themselves of these procedures, and that they do not provide due process, they cannot prove their property was taken without due process of law. *See Estes–El, supra,* 552 F.Supp. at 889.

### 4. Common Law Tort Claims

In the eighth, ninth, tenth and eleventh causes of action plaintiffs complain that various common law torts were committed in addition to the constitutional violations alleged.[12] The Federal Defendants allege that they are absolutely immune from liability for tortious acts committed within the scope of their official duties, and that accordingly these causes of action against the Federal Defendants in their individual capacities must be dismissed.[13]

On November 18, 1988, the Federal Tort Claims Act was amended to provide absolute immunity to "any employee of the [federal] Government" who acts within the scope of his employment for monetary damages arising from common law torts causing personal injury or loss of property. Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, § 5, 102 Stat. 4563, 4564 ("Reform Act"); *see Yalkut v. Gemignani,* 873 F.2d 31 (2d Cir.1989). The Reform Act was a response to the Supreme Court's decision in *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which had limit-

---

**11.** Plaintiffs urge this Court to adopt the dissenting opinion of Justice Blackmun in *Davidson, supra,* on the ground that "a state tort remedy is insufficient where potential defendants are protected by absolute immunity." Plaintiffs' Memorandum at 40.

 However, the City Defendants have not asserted a claim of absolute immunity for common law torts, and plaintiffs have not demonstrated that such a defense is available to them.

**12.** Plaintiffs have asserted the common law torts of assault, battery and intentional inflic-

tion of emotional distress. *See* Complaint ¶¶ 42, 45, 48 and 51.

**13.** Plaintiffs discuss the absolute immunity from common law torts defense solely with reference to defendant Hogan. Plaintiffs' Memorandum at 15–20. As discussed above, plaintiffs have apparently abandoned their common law tort claims against the remaining Federal Defendants. Nevertheless, the discussion here will address those defendants' defenses as well as Hogan's.

ed absolute immunity from tort claims for federal officials to situations in which the official's actions were "within the outer perimeter of [the] official's duties and ... discretionary in nature." *Id.* 108 S.Ct. at 585. The Reform Act broadened the scope of immunity; now, as long as an official is acting within the scope of his employment, the officials' tortious actions are protected. Congress specifically provided that the Reform Act was to apply to suits pending at the time of its enactment, Reform Act § 8(b), and so its provisions apply to the instant action.

■ Whether an act is included within the scope of an agent's employment is determined by a broad, two-pronged test. First, whether there is a reasonable connection between the act and the agent's duties and responsibilities and, second, whether the act is "not manifestly or palpably beyond the [agent's] authority." *Nietert v. Overby,* 816 F.2d 1464, 1466 (10th Cir. 1987); *See also Yalkut, supra,* 873 F.2d at 34. In the present case, defendants, in carrying out an homicide investigation, were each acting well within their roles as government officials and plaintiffs do not allege otherwise. *See Wyler v. United States,* 725 F.2d 156 (2d Cir.1983) (federal agents entitled to absolute immunity against common law tort during search and arrest).

■ Plaintiffs admit that as a matter of law defendant Hogan was acting within his capacity as a government officer. Plaintiffs' Memorandum at 17. By their omission of a response to the other Federal Defendants' motion to dismiss the common law claims, plaintiffs appear to concede that the remaining federal defendants were also acting within the scope of their authority. Indeed, it could scarcely be disputed that FBI agents engaged in an investigation were acting within the scope of their authority. *See, e.g., Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339 (2d Cir. 1971). Accordingly, the Federal Defendants are absolutely immune from suit for common law torts premised upon their activities at the Post.

### 5. *Sovereign Immunity*

■ To the extent, if any, the Complaint seeks money damages from the Federal Defendants in their official capacity, that claim must be dismissed. Any lawsuit against an officer of the United States in his official capacity is in essence an action against the government. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (such actions "generally represent only another way of pleading an action against an entity of which an officer is an agent") (*quoting Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 3035, 56 L.Ed.2d 611 (1978)).

> As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... Thus, ... a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Id.* An action for money damages against a federal employee in his official capacity should be treated as one against the United States where "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). Insofar as this action seeks money damages against the Federal Defendants in their official capacity, such damages are presumably sought from the public treasury. Thus, these claims are in reality claims against the United States.

It is fundamental that " '[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), (*quoting United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941)). Thus, plaintiffs' claims for money damages against the Federal Defendants in their

official capacity are barred for lack of subject matter jurisdiction, unless plaintiffs can show that the United States by statute has "unequivocally" waived immunity in suits such as this one. *Mitchell, supra,* 445 U.S. at 538, 100 S.Ct. at 1351–52; *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969) (waiver of sovereign immunity "cannot be implied but must be unequivocally expressed.").

However, no such showing can be made here for the United States has not waived sovereign immunity for money damages for constitutional torts such as those alleged in the Complaint. *See Contemporary Mission, Inc.,* 648 F.2d at 104 n. 9; *Birnbaum v. United States,* 588 F.2d 319, 327–28 (2d Cir.1978). Moreover, plaintiffs cannot base jurisdiction on the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* as they have failed to exhaust the administrative remedies available to them under that Act. *See Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983); *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Because filing an administrative claim is a jurisdictional prerequisite to the commencement of a tort action against the United States, *Wyler v. United States, supra,* 725 F.2d at 154, there is no jurisdiction over the claim for money damages against the Federal Defendants in their official capacity, and that cause of action is accordingly dismissed.

### 6. *Declaratory Relief*

■ Plaintiffs also seek a declaratory judgment and a permanent injunction against Hogan and Commissioner Ward, directing them to "cease and desist" from unconstitutional activity. The Complaint, however, does not set forth any basis for such relief. A suit for injunction, which is designed to deter, not punish, *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944), deals not with past violations, but with threatened future ones. *Swift and Co. v. United States,* 276 U.S. 311, 326, 48 S.Ct. 311, 314–15, 72 L.Ed. 587 (1928). The moving party has the burden of showing that there is some cognizable danger of recurrent violation, some-

thing more than the mere possibility which serves to keep the case alive. *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

■ Similarly, an actual or threatened violation of rights is necessary to state a claim for declaratory relief. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688 (1935). Unless there is an immediate and substantial threat of wrongful action, the possibility, or even the probability of future adverse action is not enough to establish the "actual controversy" necessary to maintain an action for declaratory judgment. *Garcia v. Brownell,* 236 F.2d 356 (9th Cir.1956), *cert. denied,* 362 U.S. 963, 80 S.Ct. 880, 4 L.Ed.2d 878 (1957); *see also Poe v. Ullman,* 367 U.S. 497, 508–09, 81 S.Ct. 1752, 1758–59, 6 L.Ed.2d 989 (1961).

■ No case or controversy exists upon which to grant claims for injunctive or declaratory relief if there is no real and immediate, as opposed to hypothetical or conjectural, threat of injury. *Los Angeles v. Lyons, supra; Ashcroft v. Mattis,* 431 U.S. 171, 172 n. 2, 97 S.Ct. 1739, 1740 n. 2, 52 L.Ed.2d 219 (1977) (*per curiam*); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Plaintiffs have not alleged any facts even remotely indicating future threatened injury, and, therefore, summary judgment is granted on plaintiffs' claim for injunctive and declaratory relief.

### CONCLUSION

Defendants' motions for summary judgment, pursuant to Fed.R.Civ.P. 56, are granted in part and denied in part. Summary judgment is granted for defendants on the following claims:

1) plaintiffs' § 1983 claim against the City of New York, Commissioner Ward and the Federal Defendants;

2) plaintiffs' claim for declaratory and injunctive relief;

3) plaintiffs' claim that the alleged use of abusive language violated their constitutional rights;

4) plaintiffs' First, Fifth, Sixth and Eighth Amendment claims;

5) plaintiffs' claims under 42 U.S.C. §§ 1985, 1986 and 1988 against defendants;

6) plaintiffs' common law tort claims against the Federal Defendants; and

7) plaintiffs' *Bivens* claims against defendant Hogan.

SO ORDERED.