**Joseph LEWIS, Plaintiff,**

v.

**Andrew MELONI, Thomas VanThof, and Jeffrey Cala, Defendants.**

**No. 93–CV–6361L.**

United States District Court, W.D. New York, Rochester Division.

Dec. 4, 1996.

---

**5.** There has been no allegation or evidence in this case that the INS has acted in bad faith.

Jeffrey Wicks, Rochester, NY, for plaintiff.

Howard A. Stark, Dep. County Atty., Thomas VanStrydonck, Rochester, NY, for defendants.

### DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

#### PROCEDURAL BACKGROUND

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this matter, including trial, by the Magistrate Judge. Pending before this Court are summary judgment motions made by Sheriff Meloni (Docket # 18) and Deputy VanThof (Docket # 26).

#### RELEVANT FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows.

Joseph Lewis (Lewis) is an ex-Marine who was born and raised in Rochester, New York. Upon his honorable discharge from the service in 1989, he lived for a time in South Carolina, although he would often visit family and friends in Rochester.

One such visit occurred during the summer of 1990 when Lewis traveled to his hometown for a family reunion. While in Rochester, Lewis stayed with his nephew Ronald Hughes, and Hughes' roommate, the now

notorious Jeffrey Cala (Cala). While residing with Hughes and Cala, Lewis observed that Cala had a serious drug problem.

Unbeknownst to Lewis, however, was that Cala's problems went beyond his own personal use of drugs. Indeed, Cala was the target of a law enforcement investigation involving the criminal sale of controlled substances, a felony for which, if convicted, Cala faced a possible life sentence. In order to alleviate the potential penalty he faced, on February 20, 1990 Cala signed a contract with the Monroe County District Attorney's office in which he agreed to "arrange" five "undercover purchases of narcotic drugs resulting in five separate prosecutable offenses for Class A–I Felony" prosecutions under New York State law. If he succeeded, the District Attorney's Office promised to recommend a sentence of lifetime probation upon Cala's plea of guilty to narcotics trafficking. Thus, unknown to Lewis, during the summer of 1990 Cala was actively involved with law enforcement agents trying to "arrange" the required five purchases of narcotics.

Sometime before August 10, 1990, Cala approached Lewis and asked to borrow several hundred dollars. Cala explained that he only needed the money for a short time and would be able to repay the loan, along with substantial interest, within a "two or three days". Lewis, who was behind in court-ordered child support payments and was apparently looking for a way to generate additional cash, agreed to loan Cala $800.

Unfortunately for Lewis, Cala did not keep his promise for immediate repayment. Instead, in a peculiar, if not unfortunate, effort to demonstrate that he was not going to "shaft" Lewis, Cala offered to post as security a small bag of white powder which Lewis believed to be cocaine. Lewis agreed to take possession of the bag as "collateral" for the loan.

On August 10, 1990 Cala announced to Lewis that he was now able to pay back the loan with interest. Cala asked Lewis to "give him a ride" so that Cala could pick up some money. Lewis agreed. At some point prior to entering Lewis' car, Cala took possession of the bag of cocaine. During a pretrial deposition, Lewis testified that he thought they were driving to Cala's grandparents house where Cala was going to obtain funds to repay him.[1]

Driving his own car, Lewis was instructed by Cala to go to B.I.C. Bowling Lanes on Goodman Street. According to Lewis, Cala briefly exited the car and then returned with an individual whom Lewis had never seen before. Cala sat in the back seat of the car while the stranger (who was Deputy Sheriff Thomas VanThof) got into the front passenger seat. VanThof asked "where's the stuff" to which Cala responded by pointing to a bag of cocaine between the two front seats. VanThof picked up the bag of cocaine, made a comment about it looking like "good stuff" and attempted to hand Lewis money. Lewis refused the money, stating that the transaction had nothing to do with him. Cala himself then took the money from VanThof and VanThof exited the car with the package. Soon thereafter, either on the way back to Cala's apartment or after arriving at the apartment, Cala paid Lewis $1600, which sum included the promised interest.

For reasons not clear, VanThof waited until December, 1990 to swear out a criminal complaint against Lewis based on the events of August 10, 1990. A warrant for Lewis' arrest was issued, but Lewis was not apprehended until January, 1991. Lewis was indicted on narcotics offenses related to the August 10, 1990 incident and was tried before a jury in New York State Supreme Court. During the trial, Lewis offered the affirmative defense of entrapment. On August 3, 1992, the jury acquitted Lewis of all charges.

About a year later, Lewis commenced the instant lawsuit. In his complaint, Lewis seeks relief pursuant to 42 U.S.C. § 1983, alleging that his federal civil rights were violated when he was arrested and prosecuted for his supposed involvement in the Au-

---

1. This deposition testimony seems to be at odds with Lewis's testimony at his criminal trial in which he stated that Cala told him he was going to "sell that package" in order to pay back the loan and asked Lewis for a ride to meet the buyer. *Compare* exhibit "C" (page 214) annexed to Wicks affidavit *with* exhibit "B" (page 328–329) annexed to Martinez affidavit.

gust 10th "drug sale". The complaint also alleges causes of action for false arrest, malicious prosecution and abuse of process. These latter claims, made pursuant to state tort law, also support claims made under § 1983. *Cook v. Sheldon,* 41 F.3d 73 (2d Cir.1994).

Essential to his lawsuit is Lewis' claim that on March 4, 1991, in a private conversation involving only Lewis and VanThof, VanThof admitted that he knew the bag of cocaine in the car was not Lewis' and that Cala was just trying to "set up" Lewis. Lewis also claims that in the same conversation VanThof admitted that he knew Cala had committed "perjury" in pursuing the arrest of Lewis. VanThof denies making any such statements.

### DISCUSSION

***The Standard for Summary Judgment:*** Summary judgment shall be granted only if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists if "the record as a whole could not lead a rational trier of fact to find for the non-moving party". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The burden of showing the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When a court is confronted with facts that permit different conclusions, all ambiguities and inferences that may reasonably be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

■ ***Deputy VanThof's Motion for Summary Judgment:*** Claiming that "at its core" the instant lawsuit is nothing more than an allegation by Lewis that his constitutional rights were violated when he was "entrapped" by the conduct of law enforcement, VanThof seeks summary judgment[2]. VanThof argues that because the facts demonstrate he had probable cause to arrest Lewis, the complaint against him alleges nothing more than facilitating Cala's efforts to entrap Lewis. VanThof submits that while entrapment may have provided a basis for Lewis to defend the criminal charges filed against him, Lewis has no constitutionally protected right to be free from entrapment and therefore no § 1983 violation could have occurred. *See e.g. Jones v. Bombeck,* 375 F.2d 737, 738 (3rd Cir.1967) (entrapment does not constitute a constitutional violation for purposes of § 1983); *Schieb v. Humane Society of Huron Valley,* 582 F.Supp. 717, 725 (E.D.Mich. 1984) (no federal constitutional right to be free from entrapment); *Johnston v. National Broadcasting Company,* 356 F.Supp. 904, 907–908 (E.D.N.Y.1973) (same). Simply put, VanThof's contention is that because he had probable cause to arrest Lewis on August 10, 1990 and because freedom of entrapment is not a right protected by the Constitution or laws of the United States, Lewis has no remedy under 42 U.S.C. § 1983 and summary judgment in his favor should be granted.

Lewis responds by arguing that while entrapment may have been used as an affirmative defense in his criminal trial, the allegations and proof in this civil trial go beyond mere entrapment. Lewis claims that the proof at trial will show that VanThof had no probable cause to arrest him and, indeed, that VanThof *knew all along* that Lewis was factually innocent of possessing the bag of cocaine. The centerpiece of Lewis' argument is the March 4, 1991 conversation between Lewis and VanThof in which it is alleged that VanThof admitted that he *knew* that the

---

**2.** Although Deputy VanThof's motion papers also seek dismissal of the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the voluminous documents outside the pleadings annexed to his motion papers require this Court to treat his motion as one for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.Proc. 12(b)(6) (if matters outside the pleadings are presented to the court on a 12(b)(6) motion, "the matter shall be treated as one for summary judgment and disposed of as provided in Rule 56".)

cocaine in the car was not Lewis's, and that he *knew* Cala was trying to "set up" Lewis.[3] Distilled to its essence, Lewis' claim is that VanThof is a rogue cop who deliberately and knowingly assisted Cala in concocting a bogus drug sale and "planting" the cocaine in plain view in the car to support a drug charge both of them knew Lewis was innocent of.

■ VanThof's argument that this case presents nothing more than a re-litigation of Lewis' entrapment defense unfairly characterizes the scope of the facts presented by plaintiff. Viewing the facts, as I must, in the light most favorable to plaintiff, the conduct alleged by Lewis is more akin to a claim of planting evidence and thereafter seeking the issuance of a complaint for a crime VanThof knew Lewis had not committed. While "entrapment" and "planting evidence" of a crime on an innocent person may be offspring of the same family of offensive police conduct, the latter, if proven, clearly supports a § 1983 action. *See e.g. Hibma v. Odegaard,* 576 F.Supp. 1549 (W.D.Wis.1984) (jury verdict upheld in § 1983 action against deputies who engineered plaintiff's arrest, planted evidence in his home and sought issuance of complaint charging him with crimes they knew he did not commit), *aff'd in part and rev'd in part,* 769 F.2d 1147 (7th Cir.1985). Should the jury credit Lewis' recollection of his March, 1991 conversation with VanThof it would not be unreasonable for the jury to return a verdict finding that VanThof violated Lewis' civil rights. The jury could find that VanThof artificially created probable cause to arrest Lewis and then used his position as a law enforcement officer to improperly commence a criminal prosecution

for a crime VanThof knew Lewis did not commit.[4]

Counsel for defendant VanThof argues with substantial force that Lewis' version of the events of August 10th and his subsequent arrest and prosecution are rife with inconsistencies and are not worthy of belief. It may well be that the road Lewis must travel to convince a jury that his civil rights were violated is an uphill one. But it is the existence of that road and not the bumps that may be in it which this Court must ascertain in evaluating whether to grant summary judgment. So long as there are facts which could, if believed by a jury, support a verdict in his favor, Lewis should be entitled an opportunity to travel that road, however steep and torturous it may ultimately turn out to be. As the Second Circuit recently reminded: "The trial court must bear in mind that '[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge.' *B.F. Goodrich v. Betkowski,* 99 F.3d 505, 521 (2d Cir.1996) *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

This Court's role on a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material facts to be tried, not to deciding them." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994). It appears to this Court that there are genuine issues of material facts with respect to the conduct of VanThof which would preclude summary judgment, not the least of which is Lewis' claim, disputed by VanThof, that VanThof admitted to knowingly conspiring with Cala to initiate a criminal prosecution against a

---

**3.** It is not clear from Lewis' affidavit recounting the conversation between him and VanThof as to when VanThof acquired the knowledge that the cocaine was not Lewis'. During oral argument, Lewis' counsel represented that Lewis will testify that VanThof told Lewis that at the time they met in the bowling alley parking lot, VanThof knew the cocaine was not Lewis' and that Cala was setting him up.

**4.** The fact that Lewis may have committed an independent crime at some time prior to August 10 (by knowingly possessing cocaine as collateral for the $800 loan) is really of no moment to

VanThof's summary judgment motion. Counsel for VanThof concedes that there is no evidence in the record before me to support a finding that VanThof *ever* knew anything about Cala's loan to Lewis or Lewis' possession of the bag of cocaine during the days prior to August 10th. Probable cause to arrest is based on what the officer knew at the point in time the arrest warrant is sought, not any "after-acquired" evidence. "Courts evaluating probable cause for arrest must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga,* 82 F.3d 563 (2d Cir.1996).

man they knew was innocent of the crime for which he was being prosecuted. For these reasons, VanThof's motion for summary judgment is **denied.**

■ *Sheriff Meloni's Motion For Summary Judgment:* It is well settled that there is no respondeat superior liability in a § 1983 action. *Monell v. Department of Social Services,* 436 U.S. 658, 690–695, 98 S.Ct. 2018, 2035–2038, 56 L.Ed.2d 611 (1978). Rather, the proof must demonstrate that each defendant had some "personal responsibility" for the alleged constitutional deprivation in order for such defendant to be liable for damages. *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991). "Moreover, a causal nexus between the supervisor's conduct and the injuries alleged must also be demonstrated." *Washington Square Post 1212 v. City of New York,* 720 F.Supp. 337, 346 (S.D.N.Y.1989), *rev'd in part,* 907 F.2d 1288 (2d Cir.1990).

■ Although the personal participation of the supervisor in the unconstitutional conduct is not a prerequisite to § 1983 liability, something more must be shown than merely the existence of a supervisor-subordinate relationship. Thus, absent personal participation in the constitutional violation, supervisor liability in § 1983 actions may be imposed only where there is some culpable action or inaction by the supervisor in the training, supervision or control of his subordinates. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (personal involvement for supervisors means direct participation, failure to remedy an alleged wrong after learning of it, creation of a policy or custom under which unconstitutional practices occur or gross negligence in managing subordinates); *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989) ("[S]upervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act"); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) ("A supervisory official may be liable because he or she created a policy of custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue").

There is no claim here that Sheriff Meloni had any direct knowledge of or participation in Lewis' arrest. Rather, Lewis endeavors to defeat Meloni's summary judgment motion by claiming material issues of fact exist with respect to (1) whether the Sheriff failed to supervise and train VanThof and (2) whether the Sheriff had a policy or custom of tolerating "negligent and/or intentional" unconstitutional arrests by his subordinate deputies. *See* October 7, 1996 Affidavit of Jeffrey Wicks, Esq. at ¶¶ 32–33.

■ 1. *Failure to Supervise or Train:* The existence of a policy or custom which violates constitutional rights may be demonstrated by "evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (*quoting Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991)). *See City of Canton v. Harris,* 489 U.S. 378, 388–392, 109 S.Ct. 1197, 1204–1207, 103 L.Ed.2d 412 (1989). *See generally* Diane M. Allen, Annotation, *Liability of Supervisory Officials and Governmental Entities for Having Failed to Adequately Train, Supervise, or Control Individual Peace Officers Who Violate Plaintiff's Civil Rights Under 42 USCS § 1983,* 70 A.L.R.Fed. 17 (1984).

■ I find the record here to be devoid of any evidence from which a reasonable jury could find or infer an unconstitutional municipal policy or custom based upon lack of training or supervision. Annexed to Sheriff Meloni's moving papers are the Sheriff Department's guidelines for the "Use and Handling of Informants" (exhibit "E"), the substantive training materials the Sheriff uses for training his deputies (exhibit "G"), the detailed rules and procedures implemented by the Sheriff Department to discipline deputies who violate federal, state or local rules or otherwise engage in misconduct (exhibit "I"), and a list of the numerous training programs Deputy VanThof attended during his employment with the Sheriff Department (exhibit "K"). In addition, Sheriff Meloni has submitted affidavits from members of his staff detailing the extensive supervision and train-

ing his department provides to all deputies, including defendant VanThof. *See* Affidavits of John J. Perrone, Jr., Lawrence W. Feasel, Anthony M. Ciaccia, Jr., Cornelius J. Flood, III, and Robert J. Squires (Docket # 18). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York,* 985 F.2d at 100. Lewis has done nothing more than make unsupported allegations, hence, his failure to train argument must fail. *Neighbour v. Covert,* 68 F.3d 1508, 1512 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996) (mere allegations of failure to train is insufficient to establish a municipal policy or custom).

■■■ 2. *Deliberate Indifference to False Arrests:* A § 1983 plaintiff may also establish a municipal policy or custom by showing that the supervisor, alerted to the possibility of unconstitutional arrests by his subordinates, exhibited deliberate indifference. However, the fact that Meloni was in a high position of authority is an insufficient basis for imposing personal liability. *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Further, mere negligence is insufficient for Meloni to incur § 1983 liability for damages. *Wise v. New York City Police Dept.,* 928 F.Supp. 355, 368 (S.D.N.Y.1996). "[S]upervisory liability may be imposed when an official has **actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.**" *Merriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989) (emphasis supplied).

In seeking summary judgment, Meloni avers that he had no direct or supervisory involvement in the events involving the investigation, arrest, or prosecution of Lewis. Affidavit of Sheriff Andrew P. Meloni at ¶¶ 5–6.

Meloni also states that he does not tolerate or acquiesce in his subordinates violating the constitutional rights of any suspect. *Id.* at ¶ 2. Supporting Sheriff Meloni's assertions are the affidavits of other high-level members of his department. (Docket # 18). These affidavits detail the disciplinary procedures utilized by the Monroe County Sheriff Department in handling allegations of misconduct and the training deputies receive to avoid engaging in misconduct.

Lewis responds to this aspect of Meloni's motion by claiming that a question of fact exists as to whether the Sheriff tolerates unconstitutional arrests. The only support Lewis submits for this claim are copies of claims and complaints filed by individuals against one or more sheriff deputies for the years 1987, 1988, 1990 and 1991. *See* exhibit "L" annexed to the affidavit of Jeffrey Wicks. (Of the seventeen "claims" constituting exhibit "L", one was filed in 1986, one in 1987, five in 1988, eight in 1989 and 2 in 1990.)[5]

■■■ I do not believe that an issue of fact as to an alleged policy of deliberate indifference to allegations of unconstitutional arrests can be created simply by attaching copies of seventeen claims made against the Sheriff over a five year period. The fact that a law enforcement agency with county-wide jurisdiction has had prior claims of false arrest made against a few individual officers does not, standing alone, demonstrate "deliberate indifference" or "gross negligence" on the part of the head of the law enforcement agency. *Mendoza v. City of Rome N.Y.,* 872 F.Supp. 1110, 1119 (N.D.N.Y.1994) ("[M]ere fact that Notices of Claim were filed does not constitute evidence of violation of Constitutional rights"); *Burnette v. Ciolino,* 750 F.Supp. 1562, 1564 (M.D.Fla.1990) (five separate shootings in five years did not establish custom or policy that unreasonable force would be tolerated by Sheriff); *Ramos v. City of Chicago,* 707 F.Supp. 345, 347 (N.D.Ill.1989) (civil rights complaint against

---

5. Lewis has also submitted copies of two separate civil rights complaints currently pending in the Western District of New York in which defendant VanThof is named as one of several defendants. *See* exhibits "M" and "N" to Wicks affidavit. (Docket # 33). However, since the of-

fensive police conduct alleged in these complaints occurred over two years *after* the conduct alleged in Lewis' complaint, Lewis can hardly contend these actions support a claim that Sheriff Meloni had *prior* knowledge of VanThof's alleged propensity to engage in illegal arrests.

city dismissed because allegations of six unrelated incidents of police brutality over ten-year period insufficient to establish municipal policy of custom). While it is true that "[a]n obvious need [to protect against constitutional violations] may be demonstrated through proof of repeated claims of civil rights violations; **deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents.**" *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995) (emphasis supplied) (summary judgment in excessive force case inappropriate where, in addition to successive complaints, plaintiff presented proof that supervisors paid virtually no attention to repeat complaints against police officers). *See Sarus v. Rotundo,* 831 F.2d 397, 401–402 (2d Cir.1987) (denial of police chief's judgment n.o.v. motion reversed where city had procedure to discipline misconduct and plaintiff presented no proof of inadequate supervision); *Fiacco v. City of Rensselaer N.Y.,* 783 F.2d 319, 328 (2d Cir. 1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987) (evidence that municipality had notice of, but repeatedly failed to make any meaningful investigation into charges of police misconduct sufficient to sustain § 1983 liability); *Batista v. Rodriguez,* 702 F.2d 393, 399 (2d Cir.1983) (denial of city's judgment n.o.v. motion reversed where, although there was some evidence of prior civil rights violations, there was no evidence that defendants knew of the prior incidents or were aware of a policy tolerating such violations).

This case was commenced in September 1993 and discovery was not closed until May, 1996 (Docket # 16). Yet, the record before me is remarkable for the lack of material facts with respect to the potential liability of Sheriff Meloni. Lewis has presented no evidence of a civil rights complaint that was not properly investigated, nor any instance where discipline should have been, but was not meted out by the Sheriff. Lewis has not cited a single inadequacy in the Sheriff's rules governing discipline of deputies or a defect in the rules governing the use of informants. Lewis has failed to develop any evidence to indicate Sheriff Meloni knew anything negative about VanThof, but failed to act, or even that there was anything negative about VanThof that the Sheriff could have known about. Finally, and most significantly, Lewis has proffered no evidence, direct or circumstantial, of any policy or custom endorsed, adopted or tolerated by Sheriff Meloni which condones deliberate indifference to an individual's civil rights. Put simply, despite ample opportunity to unearth facts in support of his allegations against Sheriff Meloni, Lewis has come up empty. *See Williams v. Garrett,* 722 F.Supp. 254, 259 (W.D.Va.1989) (summary judgment in favor of administrative officers granted where plaintiff failed to present proof of supervisor's "continued inaction in the face of documented widespread abuses"); *Washington Square Post 1212 v. City of New York,* 720 F.Supp. 337, 345–46 (S.D.N.Y.1989) (summary judgment in favor of police commissioner granted where no evidence of "widespread abuse" by police officers nor any evidence indicating commissioner supported or encouraged a "pattern of constitutional violations"); *Skorupski v. Suffolk County,* 652 F.Supp. 690, 695–696 (E.D.N.Y.1987) (summary judgment in favor of municipal defendants granted where, after extensive discovery, plaintiffs presented no evidence of non-supervision amounting to deliberate indifference). Under these circumstances, summary judgment in favor of Sheriff Meloni is appropriate and therefore is **granted.**

## CONCLUSION

For the reasons set forth herein, defendant VanThof's motion for summary judgment (Docket # 26) is **denied.** Defendant Meloni's motion for summary judgment (Docket # 18) is **granted.** Counsel for plaintiff and defendant VanThof shall appear in chambers for a final pre-trial conference on **December 17, 1996 at 3:00 p.m.**