**Ivan RIVERA, Plaintiff,**

v.

**CITY OF ROCHESTER, Michael A. Smith, individually and in his capacity as a police officer for the City of Rochester, John M. Flynn, individually and in his capacity as a police officer for the City of Rochester, Daniel B. Graves, individually and in his capacity as a police officer for the City of Rochester, David S. MacFall, individually and in his capacity as a police officer for the City of Rochester, and Scott Gould, individually and in his capacity as a police officer for the City of Rochester, Defendants.**

No. 95–CV–6580 CJS.

· United States District Court,
W.D. New York.

Sept. 23, 1998.

As Amended Dec. 23, 1998.

Nira T. Kermisch, Rochester, NY, for Plaintiff.

Charles A. LoFaso, City of Rochester, Rochester, NY, for Defendants.

## AMENDED DECISION AND ORDER

SIRAGUSA, District Judge.

This Decision and Order amends the Decision and Order of this Court entered on September 24, 1998 [# 35]. This is an action in which the plaintiff has alleged six causes of action against the defendants: (1) an excessive force claim pursuant to 42 U.S.C. § 1983 against the individual defendants; (2) an excessive force claim pursuant to 42 U.S.C. § 1983 against the City of Rochester; (3) a false arrest claim pursuant to 42 U.S.C. § 1983 against the individual defendants; (4) a false arrest claim pursuant to 42 U.S.C. § 1983 against the City of Rochester; (5) a malicious prosecution claim pursuant to either New York State law or 42 U.S.C. § 1983 against the individual defendants; and (6) a malicious prosecution claim pursuant to either New York State law or 42 U.S.C. § 1983 against the City of Rochester. The claims against the City of Rochester are premised upon the allegation that the individual officers acted pursuant to the City's "policy, custom, usage and/or practice." Before the Court is the defendants' motion for partial summary judgment, seeking the dismissal of the second, fourth, fifth and sixth causes of action. For the reasons that follow, the defendants' application is granted.

## BACKGROUND

On November 26, 1992, the defendant police officers were dispatched to the plaintiff's home to investigate an alleged domestic argument. The parties offer conflicting versions of the events that followed, however the plaintiff alleges that the four individual defendants beat him without provocation. It is undisputed that the defendants arrested the plaintiff and charged him with harassment for allegedly shoving Officer Smith, and that the defendants used physical force against the plaintiff during the arrest. On February 9, 1993, the plaintiff received an adjournment in contemplation of dismissal (ACD), and on August 9, 1993, the harassment charge was dismissed.

The plaintiff commenced this action on November 17, 1995. During discovery, the plaintiff obtained various files relating to complaints against Rochester City Police officers for use of excessive force and profanity. The Plaintiff's supplemental interrogatory response stated in relevant part:

INTERROGATORY NO. 8: State the evidence, including all facts and opinions, upon which you rely in support of Plaintiff's claims in the Second, Fourth, and Sixth Causes of Action that the actions of the individual Defendants, as stated in the First, Third, and Fifth Causes of Action, were done pursuant to policy, custom, usage, and/or practice of the City of Rochester and/or that the City ratified the actions of the Defendants.

ANSWER: Plaintiff will rely on all prior complaints, claims and causes of action filed against the individual police officers by citizens who claimed that excessive force and profanity were used against them. Plaintiff will also rely on the fact that Defendant City of Rochester, when it conducted internal investigations, swept such allegations under the rug, by taking the position whenever the citizens produced independent witnesses, that the witnesses were not to be believed and that the officers were to be believed. Plaintiff will also rely on the fact that when one member of the review committee, on one occasion, dared to express an opinion different than those expressed by the City Police Department representatives, letters were written to the Chief of Police, and others complaining about the actions of that individual, and implying that he should not serve on the committee. Plaintiff will also rely on the fact that on the one occasion when an allegation of use of profanity was upheld against two police officers, they did

not even receive a slap on the wrist. Because the City had knowledge of the propensities of the individuals to use unnecessary force and profanity, failed to take any corrective action against them, failed to protect citizens from such actions, always, with one known exception, supported the officers and justified their actions, it ratified their actions and allowed them to continue in their custom and practice of using excessive force and profanity, and made it the policy of the City to allow such actions.

The defendants' filed the subject motion on May 29, 1998. The defendants contend that they are entitled to summary judgment on the malicious prosecution claims, the fifth and sixth causes of action, on the grounds that inasmuch as the plaintiff received an adjournment in contemplation of dismissal, he cannot establish that the prosecution was terminated in his favor. The defendants also seek summary judgment as to the remaining claims against the City of Rochester, the second and fourth causes of action, on the grounds that the plaintiff cannot establish that the alleged constitutional violations were committed pursuant to a City policy or custom.

In response to the defendants' motion, the plaintiff concedes that his malicious prosecution claims must be dismissed. However, he maintains that the aforementioned police "internal affairs" files raise a triable issue of fact as to whether or not the City has a policy or custom of condoning constitutional violations of the kind complained of herein. As proof of this, the plaintiff has submitted selected portions of two internal affairs files pertaining to two separate complaints of excessive force against Officer MacFall.

The first complaint involves MacFall's alleged use of excessive force against a suspect named James McClain on the night of January 11, 1995. Mr. McClain was at the time driving a car which had been reported as having been involved in an alleged menacing with a pistol earlier in the evening. Shortly before Mr. McClain was stopped, police had also received a report of shots being fired in the area where he was driving. Officers attempted to pull over McClain's car, however er McClain continued to drive to his home. When McClain stopped his car, officers ordered him to slowly exit the car and lie down on the ground, keeping his hands in plain sight. Mr. McClain admitted that he did not immediately comply with the officers' orders to lie down, because there was a puddle of snow and water on the driveway. In a written statement, McClain's fiancee stated that "James was taking his time to get down, because of a puddle on the ground." When McClain did not lie down, officers tackled him to the ground and placed him in handcuffs. McClain claimed that while he was on the ground, officers struck him in the back of the head several times with a flashlight and grabbed his hair and smashed his head against the pavement. McClain's fiancee also stated that officers had struck him in the head with a flashlight, however she said nothing about any officer smashing McClain's head against the pavement. The internal affairs report stated that after the arrest, McClain was examined by a doctor at the Rochester General Hospital Emergency Room, who found that McClain had a superficial bruise over his right eye, but no other injuries. During the months that followed the arrest, the officer investigating McClain's complaint took statements from several neighbors and other persons who witnessed the arrest. One of the civilian witnesses to the arrest stated, "in my opinion, not a lot of force was used on this guy and he definitely was not complying with the officers' commands." Another civilian witness to the arrest stated that she saw one officer kneeling on McClain's back while he was on the ground, but that "I didn't see any other officer touch, hit, kick or push [McClain]. I didn't see any officer push [McClain's] head down or hit the guy in the head." Officer MacFall was exonerated of using excessive force.

The second complaint involves the alleged use of excessive force by MacFall, and several other officers not parties to this action, during the arrest of Arthur Miller on May 29, 1995. At that time, the officers were attempting to arrest Mr. Miller pursuant to a warrant. Mr. Miller was apparently hiding behind mattresses in his attic to avoid being arrested. The officers located Miller in the attic, at which time he "started climbing and crawling from behind the mattresses." Miller claimed that the officers punched and kicked him, and refused to loosen his handcuffs. Except for the officers and Mr. Miller,

there were no other witnesses in the attic during the arrest. A civilian witness present in the house stated that when the officers brought Miller down from the attic, one of the officers used his forearm to strike Miller in the chest, and that she later heard "a noise like a bone breaking." Mr. Miller never mentioned being struck in the chest. Civilian witnesses outside of the house stated that Miller, while handcuffed and being led to a police car, was yelling, struggling with the police, and trying to get away. Following the investigation of Miller's complaint, two members of the Professional Standards Section of the Rochester Police Department recommended that the complaint be listed as "unprovable," due to the fact that there were conflicting reports and no independent witnesses to the events which occurred in the attic. The Civilian Review Board apparently also determined that the complaint should be found "unprovable." However, after the results of the investigation were reviewed by the Rochester Police Department Command, Officer MacFall was exonerated of having used excessive force.

It is undisputed that pursuant to the City's established policy, both of these complaints were investigated by the Professional Standards Section of the Rochester Police Department, and that the results of that investigation were reviewed by both the Civilian Review Board[1] and the Command Officers of the Rochester Police Department.

The plaintiff has submitted nothing which would indicate that there have been any prior complaints of excessive force against Officers Flynn, Graves or Gould, except the plaintiff's counsel's statement that "[t]here are also complaints against Officer Gould, Officer Smith, and Officer Graves and Flynn, all along the same lines as against MacFall, all ending the same way," however she has submitted no documentation regarding these alleged complaints.[2] In its motion for partial summary judgment, the City of Rochester, through its counsel, asserts that "[e]ach citizen complaint to the Professional Standards Section of the Rochester Police Department is thoroughly investigated," and that "[t]he City of Rochester maintains no policy, practice or custom that permits the use of excessive force, assault or violation of civil rights by its police officers, nor does it ratify or condone such activities." In response, the plaintiff's counsel states, in relevant part, that "[t]he use of excessive force is so prevalent, that it is clear that the City ratifies and condones such activities. Furthermore, the City fails to take any action against the perpetrators of such activities, even though complaints are filed, and such constitutes a policy of the City."

The Court has thoroughly reviewed the parties' submissions and has considered the oral arguments of counsel.

## ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In moving for summary judgment

1. The Civilian Review Board is "a board comprised of three citizens from the Center for Dispute Settlement, each chosen on a rotating basis." Plaintiff's Affirmation in Opposition, Exhibit "A."

2. With regard to the alleged complaints against officers Gould, Smith, Graves and Flynn, plaintiff's counsel states that "[i]f the Court wishes to review the complaints, I would be happy to provide the files to the Court." Fed.R.Civ.P. 56(e) states in relevant part that a party opposing

summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Accordingly, the Court will make its decision based upon the record that is before it, without regard to documents which the plaintiff has chosen not to submit.

against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ It is well settled that an essential element of a claim for malicious prosecution, under both New York law and under 42 U.S.C. § 1983, is that prosecution have been terminated in the plaintiff's favor. *See, Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983); *see also, Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779. For purposes of a malicious prosecution claim, an adjournment in contemplation of dismissal does not constitute a termination in the accused's favor. *See, Singleton v. City of New York,* 632 F.2d 185, 193–94 (2d Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *see also, Parkhurst v. Westchester County Dept. of Soc. Services,* 228 A.D.2d 568, 644 N.Y.S.2d 768 (2d Dept.1996). Here, the plaintiff concedes that his criminal prosecution terminated with an adjournment in contemplation of dismissal. Accordingly, the claims for malicious prosecution must be dismissed.

■ It is also well settled that a municipality will not be held liable for injuries inflicted solely by its employees and agents. *Monell v. Department of Soc. Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A muncipality will be held liable for constitutional violations caused by its official policies and customs, made by a lawmaker or one "whose edicts or acts may be said to fairly represent official policy." *Id.* A plaintiff need not demonstrate that the municipality had a formal rule or regulation that caused the constitutional deprivation. *See Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). A plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Id.* "[D]eliberate indifference may be inferred if the complaints are followed by

no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.*

In order for the plaintiff to establish that the Rochester Police Department was deliberately indifferent to the risk that the defendants would commit constitutional violations, he would first have to establish that the Department was aware of such a risk. However, the plaintiff was arrested in 1992, while both of the aforementioned complaints against Officer MacFall deal with arrests which occurred in 1995. These 1995 complaints are not probative of whether or not the Rochester Police Department had any knowledge in 1992 of MacFall's alleged propensity to commit constitutional violations. *See, Lewis v. Meloni,* 949 F.Supp. 158, 164 (W.D.N.Y.1996). Moreover, while the plaintiff's counsel asserts that there are similar complaints against Officers Gould, Smith, Graves and Flynn, she does not mention the dates of these alleged complaints. Therefore, the record is devoid of any evidence that at the time of the plaintiff's arrest, the City of Rochester had knowledge of a risk that the defendants herein would commit constitutional violations. Accordingly, the defendant City of Rochester is entitled to summary judgment because the plaintiff has failed to submit any proof that there is a triable issue of fact as to whether or not the city was deliberately indifferent to the commission of constitutional violations by its police officers.

### CONCLUSION

Accordingly, the defendants' motion for partial summary judgment [# 27] is granted. The plaintiff's second, fourth, fifth and sixth causes of action are dismissed, with prejudice. This Decision and Order amends the Decision and Order of this Court entered on September 24, 1998.

So ordered.